**SIGNED this 17 day of July, 2019.**



_____
John T. Laney, III
**United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

|  |  |  |
|---|---|---|
| **In re:** | ) | |
| **JAMES SANDIFER &** | ) | **Case No. 18-40959-JTL** |
| **WILLIE ANN SANDIFER,** | ) | |
| | ) | **Chapter 13** |
| **Debtors.** | ) | |

**MEMORANDUM OPINION SUSTAINING CREDITOR CAPITAL ASSET RECOVERY, dba, CRS, LLC.'S OBJECTION TO CONFIRMATION**

This matter came before the Court after Creditor Capital Asset Recovery, dba, CRS, LLC. ("CRS") filed an objection to the Debtors' proposed Chapter 13 plan. Specifically, CRS objected to the Debtors' cram-down of its secured claim. This raises the issue of whether the undesignated paragraph following 11 U.S.C. § 1325(a)(9), often referred to as "the hanging paragraph,"[1] prohibits the Debtors from bifurcating CRS's claim and reducing the secured claim paid through the Chapter 13 plan to the value of the collateral.

---

[1] Citing to a statute that is has no alphanumeric designation poses obvious problems. The Eleventh Circuit's solution in *DiamlerChrysler Fin Servs. Ams. LLC v. Barrett (In re Barrett)*

The Court held a hearing at which the Debtor Husband's ("Mr. Sandifer") testimony was proffered and the parties presented arguments on the legal issues in this case. The Court took the matter under advisement to review the applicable law. Having done so, the Court sustains CRS's objection for the reasons stated below.

## FACTUAL FINDINGS

The Debtors filed this case on September 27, 2018, seeking relief under Chapter 13 of the Bankruptcy Code. (Doc. No. 1). With their petition, the Debtors filed a Chapter 13 plan ("the Plan"). (Doc. No. 5). The Plan, as relevant here, proposed to pay CRS's secured claim at the value of the claim's collateral, a 2008 Toyota Tacoma ("the Collateral"), as permitted by 11 U.S.C. § 506. CRS filed an objection and an amended objection to its treatment under the Plan. (Doc. Nos. 20 & 21).

In the objections, CRS raised numerous issues. At the confirmation hearing however, CRS conceded all objections except the Debtors' proposed cram-down of its secured claim. CRS argued that the hanging paragraph prevented paying the secured claim at the value of the Collateral, as CRS held a purchase money security interest and the Collateral was purchased less than one-year from the petition date.

The Debtors' attorney proffered testimony that Mr. Sandifer and his adult son purchased the Collateral jointly and co-signed on the corresponding note. Mr. Sandifer agreed to this arrangement because his son would not have otherwise qualified for financing. From the time of the purchase and through the date of the confirmation hearing, the son has not lived in close

---

offers the clearest work-around. See 543 F.3d. 1239, 1241 note 1. As the Eleventh Circuit did in that case, the Court in this opinion will refer to this subsection as "the hanging paragraph" in the text and cite the paragraph as 11 U.S.C. § 1325(a)(*).

2

proximity to the Debtors. Further, the son has exclusively operated the vehicle. CRS consented to this proffer of testimony and agreed that the issues before the Court are primarily legal—as opposed to factual—in nature.

## LEGAL CONCLUSIONS

The issue before the Court is one of statutory interpretation. This begins, of course, with the plain language of the statute. *U.S. v. Ron Pair Enters. Inc.*, 489 U.S. 235, 241 (1989). Only when the statute is susceptible to more than one reasonable interpretation can a court look beyond the statute to assist in interpretation. *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016). Where the language is unambiguous and the statutory scheme is coherent and consistent, judicial inquiry ends and courts must interpret the statute according to its plain meaning. *McCarthan v. Dir. Of Goodwill Indus.-Suncoast*, 851 F.3d 1076, 1123 (11th Cir. 2017).

Turning then to the language at issue in this case, the hanging paragraph in its entirety provides:

> For purposes of [11 U.S.C. § 1325(a)(5), the subsection addressing treatment of secured claims in a Chapter 13 plan,] section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a)(*).

The hanging paragraph limits debtors' ability to bifurcate secured claims in Chapter 13 cases. Of course, it does not prohibit bifurcation of every secured claim in a Chapter 13 case. First, the limitation applies to claims secured by a purchase money security interest ("PMSI").

3

Secondly, the hanging paragraph imposes time limitations preventing the cram down of the secured claim. The limitation's duration depends on the collateral securing the debt. The first of the two timing limitiations is specific in the collateral it addresses. It prohibits bifurcation of a security interest in "a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor," if purchased within the 910-days preceding the petition date. But where the first provision is specific, the second is general. It prohibits modification of a security interest in "any other thing" if purchased within one year of the petition date.

Here, the evidence before the Court clearly indicates that Mr. Sandifer did not purchase the Collateral for his personal use. Mr. Sandifer purchased his interest in the Collateral and assumed liability on the note solely to ensure that his son could purchase and finance the Collateral. The son does not live in the Debtors' house and does not contribute to its upkeep. Under any interpretation then, only the second provision in the hanging paragraph could apply to CRS's secured claim.

The phrase "any other thing" in the second provision signals that the provision addresses any residual PMSI collateral. That is, "any other" PMSI collateral not covered in the first provision. Therefore, the collateral addressed in the second provision depends on what is addressed in the first. If the first provision generally applies to all motor vehicles (and prohibits modification only when the collateral was purchased within 910-days of the petition date *and* when the collateral was acquired for the personal use of the debtor), the second provision applies to "any other thing" besides motor vehicles. Alternatively, if the first provision narrowly applies to motor vehicles acquired for the debtor's personal use, the second provision must apply to "any other thing" including motor vehicles not acquired for the debtor's personal use.

4

A plain reading of the hanging paragraph leads this Court to conclude that the latter interpretation is correct—that the second provision addresses "any other thing" including motor vehicles not acquired for the debtor's personal use. Principally, the first provision does not refer to motor vehicles generally. Instead, pertains to motor vehicles purchased for a particular use. In a single independent clause, the provision makes the 910-day period applicable to collateral that consists of "a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor." The phrase "acquired for the personal use of the debtor" is neither offset as a dependent clause nor otherwise separated from the phrase "a motor vehicle."[2] There is no grammatical justification for splitting the clause. Therefore, when the second provision provides for "any other thing," a court cannot read "any other thing besides a motor vehicle." It must consider the entire phrase describing the collateral addressed in the first provision. A court must read "any other thing besides a motor vehicle acquired for the personal use of the debtor."

Additionally, the hanging paragraph's structure indicates that it broadly prohibits bifurcation of PMSI claims, subject only to particular timing limitations. Before distinguishing treatment between different types of collateral, the hanging paragraph addresses claims subject to a PMSI. There is no limiting language—such as "those PMSIs that…" or "some PMSIs" —that would suggest Congress intended to exclude the hanging paragraph's application to PMSIs secured by certain types of collateral. Rather, the only limitations pertain to timing: providing a 910-day limitation on a specific type of collateral and a one-year limitation on "any other thing."

---

[2] The parenthetical within the phrase does not change this result. If anything, it supports the argument that the first provision does not apply to all motor vehicles generally. The statute referenced in the parenthetical defines a motor vehicle as "a vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads, and highways, but does not include a vehicle operated only on a rail line." 49 U.S.C. § 30102(7). By referencing this definition, Congress is signaling that the first provision's application to motor vehicles depends on the vehicle's use and does not apply generally.

As the hanging paragraph applies broadly to PMSI claims and makes two limitations to its application based on timing, the Court cannot find that its application can be restricted based solely on the collateral's intended use. The debtor's intended use of the collateral only dictates the applicable timing limitation.

Admittedly, the majority of bankruptcy courts interpreting the hanging paragraph have come to a different conclusion. Many have done so by over-extending language in the *In re Hayes* opinion, 376 B.R. 655 (Bankr. M.D. Tenn. 2007), authored by Judge Lundin. That court noted that the hanging paragraph "has different rules for two classes of collateral—motor vehicles or any other thing of value." *In re Hayes*, 376 B.R. at 664. Based on this distinction, Judge Lundin reasoned that Congress "intend[ed] to treat motor vehicle collateral differently than any other collateral." *Id.* Citing this language, some bankruptcy courts have reasoned that, if the hanging paragraph makes a distinction between motor vehicle and non-motor vehicle collateral, then the paragraph does not address motor vehicles for non-personal use and modification is permitted regardless of when the debtor purchased the vehicle. E.g., *In re Ford*, 07-28188-SVK, 2008 WL 1925153, *5 (Bankr. E.D. Wis. April 29, 2008); *In re Horton*, 398 B.R. 73 (Bankr. S.D. Fla. 2008); see also *In re Ellegood*, 362 B.R, 696, 704 (Bankr. E.D. Va. 2007) (not citing *In re Hayes* but nevertheless concluding that the hanging paragraph creates two categories of secured debt, one for motor vehicles and another for non-motor vehicles).

But notably, *Hayes* did not address the issue before this Court. There, the parties agreed that the collateral was acquired for the debtors' personal use. *Hayes*, 376 B.R. at 664. The issue in *Hayes* was whether debt for credit disability insurance (GAP insurance) and debt to pay negative equity could be included in the secured claim under the hanging paragraph. *Id.* at 658. Given these stipulations and the limited issues before it, the *Hayes* Court made the broad

6

statement that the hanging paragraph treats motor vehicles differently. In the context before this Court however, that statement is not strictly correct. As previously explained, a court cannot strip the phrase "acquired for the personal use of the debtor" from "motor vehicle." The hanging paragraph does not indicate that Congress intended to treat *all* motor vehicles differently; rather, it indicates Congress intended to treat *only* motor vehicles acquired for the personal use of the debtor differently. The statute imposes a longer timing limitation for this specific collateral. For all other PMSI collateral, a shorter limitation is imposed.[3]

Other bankruptcy courts in the majority have also argued that interpreting the one-year cram down limitation to apply to motor vehicles for non-personal use overextends the hanging paragraph to all claims secured by PMSIs. A commonly stated cannon of statutory interpretation holds that courts should disfavor an interpretation that makes a word in a statute superfluous. *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("[C]ourts should disfavor interpretation of statutes that render language superfluous.") Citing this cannon, bankruptcy courts have argued that applying the hanging paragraph to vehicles for non-personal use would make the word "other" superfluous because, effectively, no PMSI claim could be crammed down if purchased within one year. *E.g.*, *In re Balsinde*, 07-10093-RBR, 2007 WL 4247642, (Bankr. S.D. Fla. Nov. 29, 2007).

---

[3] The Debtors argue that this interpretation violates the "specific/general" cannon of statutory interpretation. This Court disagrees. The statute provides a specific timing limitation for collateral acquired for a particular use (motor vehicles acquired for the debtor's personal use). This is the specific provision. The general provision applies to "any other thing." The Court's interpretation does not run afoul of that statutory interpretation cannon. In fact, it follows the cannon. See *In re Littlefield*, 388 B.R. 1, 5 (Bankr. D. Me. 2008) ("Indeed, if the specific controls the general, does not the hanging paragraph's clause *specifically* address motor vehicles acquired for the debtor's personal use?") (emphasis in original).

This argument misunderstands that cannon of statutory interpretation. Only when an interpretation would make a word or phrase "wholly superfluous[,]" should the court reject the interpretation. *Id.* Indeed, when interpreting the Bankruptcy Code the Supreme Court has accepted that some overlap may occur, but overlap alone does not preclude the interpretation. *Husky Int'l Elec., Inc. v. Ritz*, 578 U.S. ___, ___ (2016) (slip op., at 14) (concluding that, although the Court's interpretation of actual fraud under 11 U.S.C. § 523(a)(2)(A) may create some overlap with other subsections, the interpretation "preserves meaningful distinctions" between these bases for relief and is permissible). This is clearly the situation here. The hanging paragraph can easily be interpreted to—in fact, this Court has explained it clearly does—distinguish between collateral for the purpose of assigning a timing limitation. This interpretation does not make the word "other" superfluous; rather, the word is necessary to assign the corresponding timing limitation.

Lastly, some courts in the majority have concluded that the hanging paragraph's use of the phrase "other thing" refers only to a motor vehicle regardless of its use. E.g., *In re Thompson*, 08-63957-ESL, 2009 WL 1758757 *4 (Bankr. N.D. Ohio June 17, 2009); *In re Horton*, 398 B.R. 73, 76 (Bankr. S.D. Fla. 2008). Many of these courts have reached this conclusion based on legislative history. *Id.* (citing H.R. Rep. No. 109–31(I), Bankr. Abuse Prevention and Consumer Prot. Act of 2005, 109th Cong. (2005), U.S. Code Cong. & Admin. News 2005, p. 88). But as previously explained, this Court does not believe that the statute is ambiguous. Therefore, reference to the congressional record is inappropriate. *Kaye v. Blue Bell Creameries, Inc.(In re BFW Liquidation, LLC)*, 899 F.3d 1178, 1189-90 (11th Cir. 2018) ("When the plain language of a statute is unambiguous, we need not—indeed, should not—look beyond that plain language to determine its meaning.")

Even when the argument is not based on legislative history, it fails to hold weight. Common usage of the phrase "other thing" is much too broad to conclude that the phrase is used to refer only to collateral other than motor vehicles. Though a motor vehicle for personal use and one for non-personal use could be described as the same thing, as in both vehicles, they could also be described as different things considering their different uses and, most importantly, the implications their use would have on applying the hanging paragraph. A debtor's attorney may advise his client that a motor vehicle acquired for personal use two-years before the petition date is one thing. But, the same vehicle, acquired at the same time for non-personal use, is another thing entirely. The first "thing" implicates the 910-day limitation; the "other thing" does not. Given this broad meaning, the Court does not believe the phrase indicates Congress intended the second provision to refer only to non-motor vehicle collateral.

## CONCLUSION

For the reasons stated above, the Court concludes the hanging paragraph prevents a Chapter 13 debtor from cramming down a claim secured by a PMSI in a motor vehicle purchased for non-personal use within one year of the petition date. The hanging paragraph applies broadly to claims secured by a PMSI. It prevents bifurcation of the claim if the collateral securing it was purchased within certain time periods. A 910-day limitation applies to motor vehicles acquired for the debtor's personal use. A one-year limitation applies all other PMSI collateral. The Court will enter a separate order sustaining CRS's objection and denying confirmation.

[End of Document]